UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

SHARLA STEINER−LEACH,

                    Petitioner,

        v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security
Administration,[1]

                    Respondent.

Case No. 1:15-cv-00523-CWD

**MEMORANDUM DECISION
AND ORDER**

## INTRODUCTION

Currently pending before the Court is Sharla Steiner−Leach's Petition for Review

of the Respondent's denial of social security benefits, filed on November 4, 2015. (Dkt.

1.) The Court has reviewed the Petition for Review and the Answer, the parties'

memoranda, and the administrative record (AR), and for the reasons that follow, will

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Fed. Rule Civ. P. 25(d), Nancy A. Berryhill should be substituted for Carolyn W. Colvin as the Respondent in this matter. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**MEMORANDUM DECISION AND ORDER - 1**

affirm the decision of the Commissioner.

## PROCEDURAL HISTORY

Petitioner filed an application for Disability Insurance Benefits and Supplemental Security Income on November 14, 2012. This application was denied initially and on reconsideration, and a hearing was held on April 10, 2014, before Administrative Law Judge (ALJ) Lloyd Hartford. After hearing testimony from Petitioner and a vocational expert, ALJ Hartford issued a decision on June 2, 2014, finding Petitioner not disabled. Petitioner timely requested review by the Appeals Council, which denied her request for review on September 11, 2015.

Petitioner appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing, Petitioner was twenty-five years of age. Petitioner has a high school education. Her prior work experience includes full-time work as a cashier, having worked at Home Depot in the past.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantial gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since her alleged onset date of November 14, 2012.

At step two, it must be determined whether the claimant suffers from a severe

**MEMORANDUM DECISION AND ORDER - 2**

impairment. The ALJ found Petitioner's disorder of the muscle, ligament, and fascia, which affected the use of her dominant right hand, severe within the meaning of the Regulations.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found Petitioner's impairments did not meet or equal the criteria for the listed impairments, specifically considering Listing 1.02 for major dysfunction of a joint.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity (RFC) and determine, at step four, whether the claimant has demonstrated an inability to perform past relevant work. In assessing Petitioner's functional capacity, the ALJ determines whether Petitioner's complaints about the intensity, persistence and limiting effects of her pain are credible.

Here, the ALJ found Petitioner's complaints about the intensity and persistence of her pain not entirely credible. The ALJ found also that the medical source statements of Petitioner's treating physicians, Drs. Gustavel and Krafft, were not consistent with the medical records as a whole from Petitioner's onset date forward. Accordingly, the ALJ gave the physicians' opinions limited weight.

After so doing, the ALJ determined Petitioner retained the ability to perform light work, with the exception that she could lift or carry twenty pounds occasionally and ten pounds frequently; stand or walk six hours in an eight-hour workday and sit six hours during an eight-hour workday; occasionally push or pull with the right upper extremity;

**MEMORANDUM DECISION AND ORDER - 3**

never climb and occasionally crawl; occasionally reach in front, laterally, and overhead and occasionally handle, finger and feel with the right upper extremity. (AR 18.) The ALJ further stated that Petitioner is essentially a one-armed worker due to her right shoulder impairment, and is limited to using her right arm as a helper as Petitioner described during her testimony. (AR 18.)

The ALJ found Petitioner did not retain the ability to perform her past relevant work as a cashier, and therefore proceeded to step five. The burden shifts to the Commissioner to demonstrate, at step five, that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience. Here, the ALJ found Petitioner retained the ability to perform the requirements of representative occupations such as surveillance system monitor, escort driver, and information clerk. Consequently, the ALJ determined Petitioner was not disabled.

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if her physical or mental

**MEMORANDUM DECISION AND ORDER - 4**

impairments are of such severity that she not only cannot do her previous work but is

unable, considering her age, education, and work experience, to engage in any other kind

of substantial gainful work which exists in the national economy. 42 U.S.C. §

423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if

the decision is supported by substantial evidence and is not the product of legal error. 42

U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474

(1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v.*

*Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.

*Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a

preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not

mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552,

565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by

substantial evidence, even though other evidence may exist that supports the petitioner's

claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453,

1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by

substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if

there is substantial evidence to support the decision of the Commissioner, the decision

must be upheld even when the evidence can reasonably support either affirming or

**MEMORANDUM DECISION AND ORDER - 5**

reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

When reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard a claimant's self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## DISCUSSION

Petitioner suffered a work related injury on January 7, 2008, to her right shoulder, which is her dominant arm. Conservative treatment was initially tried without success. On October 28, 2008, Dr. Goodwin performed diagnostic arthroscopy with posterior capsular repair and shift of Petitioner's right shoulder. After surgery, Petitioner underwent physical therapy, and experienced decreased range of motion and discomfort. On January 26, 2010, Dr. Swartsman evaluated Petitioner. In his opinion, the shoulder repair failed superiorly. Petitioner reports she has difficulty with activities of daily living, due to the limited use of her right arm and hand.

According to an independent medical evaluation performed by Dr. Krafft on

October 31, 2011, Petitioner is limited with the use of her right upper extremity, and cannot lift to shoulder height or above, and her ability to reach is similarly limited. (AR 277.) With respect to Petitioner's right arm, Dr. Krafft limited Petitioner to lifting no greater than five pounds to the shoulder level, limited use above shoulder level, and limited lifting to waist level of ten pounds. (AR 277.) Petitioner complained of continued pain in her right shoulder, elbow, and wrist, and that she could not do much of anything without pain, experiencing a pain level of 7 on average. (AR 271.) However, Dr. Krafft noted Petitioner sat continuously for over thirty minutes during the interview, exhibited no significant pain behavior, was not currently taking pain medication, and that Petitioner's pain drawing exhibited findings suggestive of some symptom magnification. (AR 273-276.)

Dr. Gustavel, Petitioner's treating physician, completed a RFC questionnaire on March 7, 2013. (AR 301.) He noted right shoulder pain, with decreased range of motion and shoulder instability. (AR 303.) In his opinion, Petitioner would require a job which permits shifting positions at will between sitting, standing, and walking, and that she would have difficulty doing repetitive reaching, handling or fingering with her right hand. (AR 303-304.) Dr. Gustavel limited Petitioner's ability to grasp, turn, and twist objects, and perform fine manipulation with her right hand, to 50% of the time during an 8-hour work day, with no reaching. (AR 304.) Additionally, Dr. Gustavel was of the opinion Petitioner would miss work more than four times each month due to her impairments. (AR 304.) Dr. Gustavel qualified his opinion, stating that he "was not the treating

**MEMORANDUM DECISION AND ORDER - 7**

surgeon," and that many of these questions "are difficult at this time" due to the need for possible surgery in the future. (AR 304.)

At the time of the hearing on April 10, 2014, Dr. Goodwin had referred Petitioner to Dr. Cline, a neurologist, who later examined Petitioner on April 17, 2014. (AR 362.) Dr. Cline recommended EMG and nerve conduction studies. (AR 363.) Those studies were conducted on June 30, 2014, and Dr. Goodwin reviewed them and prepared a report on July 8, 2014. Petitioner attached both of these documents to her opening brief for the Court's consideration.

Petitioner contends first that the nerve conduction study results and Dr. Goodwin's report, which were provided to the Appeals Council, should be included in the record on appeal. Next, Petitioner contends the ALJ erred at steps three and four. Specifically, Petitioner argues the ALJ improperly rejected the opinions of Dr. Krafft, Dr. Gustavel, and Dr. Goodwin in favor of the reviewing examiners' opinions. Petitioner argues also that the ALJ failed to properly consider the Petitioner's loss of use of her dominant arm, which further limits her ability to perform jobs one-handed. Accordingly, Petitioner contends the ALJ's RFC assessment did not adequately consider Petitioner's impairments, and was erroneous. The Court will address each of Petitioner's arguments below.

1.    **Additional Evidence**

Petitioner contends that new evidence submitted to the Appeals Council should be included in the record on appeal.[2] Petitioner provided the Court with copies of Dr. Cline's nerve conduction study results and Dr. Goodwin's report, dated June 30, 2014 and July 8, 2014, respectively. Petitioner contends good cause exists for allowing this evidence in the record, because the reports were not available at the time of the hearing. Petitioner requests remand for consideration of the new evidence.

The Appeals Council declined to consider the new evidence, because the ALJ decided Petitioner's case up through June 2, 2014, and the information provided referred to a later time. (AR 2.) Accordingly, the Appeals Council determined the new evidence did not affect the decision about whether Petitioner was disabled beginning on or before June 2, 2014. Respondent contends the Appeals Council correctly applied 20 C.F.R. § 416.1476, which permits the submission of material evidence relating to the period on or before the date of the ALJ's hearing decision. Because this evidence did not so relate, Respondent argues the Appeals Counsel correctly rejected the evidence.

20 C.F.R. § 404.970(b) provides that, if "new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision." In other words, medical evaluations made after the relevant time period—in this case the date of

---

[2] Petitioner provided additional records, which the Appeals Council reviewed and included in the record, but the two documents attached to Petitioner's brief were not included.

**MEMORANDUM DECISION AND ORDER - 9**

the ALJ's decision—are relevant where they concern Petitioner's condition during the time period at issue. *See Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1232 (9th Cir. 2011) (finding that "medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition"). If the Appeals Council was required to consider additional evidence, but failed to do so, remand to the ALJ is appropriate so that the ALJ can reconsider its decision in light of the additional evidence. 20 C.F.R. § 404.970(b).

The court's holding in *Taylor* is not applicable here. Unlike in *Taylor*, the additional evidence in this case not only post-dates the ALJ's decision, but it was also based upon treatment and diagnostic tests rendered after the ALJ's decision. Although Dr. Goodwin's July 8, 2014 assessment interpreting the nerve conduction studies related Petitioner's shoulder condition and ulnar nerve dysfunction to symptoms that existed prior to the ALJ's decision, *Taylor* does not support inclusion of Dr. Goodwin's assessment as part of the record. Here, the EMG testing, and Dr. Goodwin's opinion based upon the EMG testing, both occurred after the ALJ rendered his determination. The opinion expressed by Dr. Goodwin was based upon his interpretation of the significance of the EMG test results, which occurred after the ALJ's June 2, 2014 decision. His interpretation of the test results therefore does not relate to treatment that occurred prior to the date of the ALJ's opinion.

Even if the Appeals Council's determination to exclude the EMG test results and Dr. Goodwin's assessment from the administrative record was in error, the error was

**MEMORANDUM DECISION AND ORDER - 10**

harmless. Error is harmless if the testimony at issue describes the same limitations as testimony that the ALJ properly rejected. *See Molina v. Astrue*, 674 F.3d 1104, 1117. But such error is not harmless if the testimony at issue describes different limitations or might otherwise have affected the ultimate nondisability determination. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006).

At the hearing, Petitioner described limited use of her right hand and shoulder. (AR 19.) Prior EMG studies, dated October 14, 2013, revealed right cubital tunnel syndrome and evidence of denervation of the right serratus anterior. (AR 21.) Petitioner complained of increased nerve pain on February 27, 2014, and difficulty with fine motor movement of her right hand. (AR 22.) Petitioner testified she could use her right arm as a helper for the left arm. (AR 23.) The results of the later nerve conduction study, which simply confirmed evidence of right cubital tunnel syndrome with mild neurogenic denervation in the ulnar innervated hand muscles, and Dr. Goodwin's hypothesis that the nerve may have become damaged as a result of Petitioner's prolonged use of a gunslinger orthosis, does not alter or change the ALJ's conclusion that Petitioner had limited use of her right arm and hand. (*See* AR 23 wherein the ALJ considered the loss of function in Petitioner's arm and hand.) Thus, any error in the Appeals Council's failure to consider or admit into the record the two documents was harmless.

## 2.    Physician Opinions

Petitioner contends the ALJ erroneously rejected the opinion of Petitioner's treating providers, Drs. Krafft, Gustavel, and Goodwin, because the ALJ did not properly

weigh their opinions against those of the state agency physicians, and erroneously

concluded the opinions were not supported by or consistent with other medical evidence.

The Ninth Circuit Court of Appeals distinguishes among the opinions of three

types of physicians: (1) those who treat the claimant (treating physicians); (2) those who

examine but do not treat the claimant (examining physicians); and (3) those who neither

examine nor treat the claimant (nonexamining physicians). *Lester v. Chatter*, 81 F.3d

821, 830 (9th Cir. 1995). As a general rule, more weight should be given to the opinion

of a treating source than to the opinion of doctors who do not treat the claimant. *Winans

v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987).

Where the treating doctor's opinion is not contradicted by another doctor, it may

be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391,

1396 (9th Cir. 1991). Also, "clear and convincing" reasons are required to reject the

treating doctor's ultimate conclusions. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir.

1988). Even if the treating doctor's opinion is contradicted by another doctor, the

Commissioner may not reject this opinion without providing "specific and legitimate

reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*,

722 F.2d 499, 502 (9th Cir. 1983).

An ALJ is not required to accept an opinion of a treating physician if it is

conclusory and not supported by clinical findings. *Matney ex rel. Matney v. Sullivan*, 981

F.2d 1016, 1019 (9th Cir. 1992). Additionally, an ALJ is not bound to a physician's

opinion of a claimant's physical condition or the ultimate issue of disability. *Magallanes*

**MEMORANDUM DECISION AND ORDER - 12**

*v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the record as a whole does not support the physician's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*; *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999). An ALJ also may reject a treating physician's opinion if it is based "to a large extent" on a claimant's self -reports that have been property discounted as not credible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

First, Petitioner argues the ALJ failed to give a reason for rejecting Dr. Krafft's opinion that Petiioner's lifting was limited to five pounds frequently and ten pounds occasionally, and failed to identify what part of Dr. Krafft's opinion was given weight and what part was not. Given Petitioner's RFC, wherein the ALJ determined Petitioner could lift ten pounds frequently and carry twenty pounds occasionally, Petitioner argues it was clear Dr. Krafft's opinion was rejected by the ALJ. (AR 17, 20.)

Dr. Krafft, however, was specifically tasked with evaluating Petitioner's non-functional right arm, and he expressly stated his examination focused on her upper back, right shoulder, elbow, and wrist. (AR 273 - 277.) Although it is not entirely clear from Dr. Krafft's analysis, it appears his assessment of Petitioner's work capacity with regard

to lifting related to Petitioner's right arm only, not her overall capacity for lifting. (AR 277.)

In contrast to Dr. Krafft's assessment, the ALJ limited Petitioner's use of her right arm to that of a helper for the other arm, as described in Petitioner's testimony. (AR 18.) Thus, once the RFC assessment is juxtaposed with the purpose and scope of Dr. Krafft's assessment, which was limited to evaluation of the right arm, it is clear the ALJ was assigning greater limitations to the use of Petitioner's right arm than was Dr. Krafft. The ALJ's RFC determination---that Petitioner can lift ten pounds frequently and carry twenty pounds occasionally---is consistent with Petitioner's testimony that she could lift her three-year old daughter with her left arm. (AR 19.) The ALJ accepted Petitioner's testimony that, at most, her right arm and hand were limited to such activities as putting on make-up, brushing her teeth, sometimes eating, and using her right hand to assist with dressing.  (AR 19.) This represents a greater limitation than what Dr. Krafft assigned at the time of his evaluation. There was, therefore, no error.

Next, Petitioner takes issue with the ALJ's evaluation of Dr. Gustavel's opinion. The ALJ found Dr. Gustavel's opinions were internally inconsistent, because he provided no limitations for lifting, standing, walking, and sitting, and stated Petitioner could grasp, turn, twist objects, and fine manipulate 50% of the time during an eight-hour workday, yet her impairment would constantly interfere with attention and concentration and result in four missed days of work each month. (AR 21.) Additionally, the ALJ noted Dr. Gustavel's opinion contradicted other evidence in the record, in that Petitioner was

**MEMORANDUM DECISION AND ORDER - 14**

capable, on a daily basis, of driving, shopping, caring for her child, preparing meals, and using her right arm as a helper for her left arm.

The reasons provided by the ALJ for giving Dr. Gustavel's opinion little weight are specific and legitimate reasons supported by substantial evidence in the record. Dr. Gustavel opined that Petitioner could sustain an eight hour workday with no other limitations other than limitations on grasping and reaching with her right hand, yet was of the opinion that her symptoms would "constantly" interfere with her attention and concentration, which is contradictory. The ALJ then noted that Petitioner's daily activities were in contrast with such an opinion.

As for Petitioner's pain complaints, which Petitioner argues support her contention that her concentration would be impaired as Dr. Gustavel noted, the ALJ specifically found Petitioner's allegations of pain were not supported by the medical assessments, or her daily activities, and he found Petitioner not credible with regard to her allegations of disabling pain. (AR 23.) Petitioner does not challenge the ALJ's credibility assessment. When discussing the medical evidence, the ALJ noted Dr. Krafft reported some signs of symptom magnification, and that she was not taking medications of any kind at that time. (AR 20.) Further, the ALJ noted Petitioner's own testimony was that she could use her right arm as a helper for her left arm, and was able to lift and carry her daughter throughout the day. (AR 22.)

Accordingly, the Court finds the ALJ's conclusions free from legal error with regard to the weight given to the treating physicians' opinions.

**MEMORANDUM DECISION AND ORDER - 15**

### 3.    Residual Functional Capacity

Last, Petitioner argues the ALJ's RFC determination is not supported by substantial evidence in the record. A claimant's RFC represents a finding of the range of tasks she is capable of performing notwithstanding the impairments at issue. 20 C.F.R. § 404.1545(a). An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomology, including pain, and other limitations which could interfere with work activities on a regular and continuing basis. *Id*. To properly ascertain a claimant's RFC, an ALJ must therefore assess Petitioner's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push and pull. 20 C.F.R. §§ 404.1545(b), 404.1569a. Nonexertional limitations or impairments, including impairments which result in postural and manipulative limitations, must also be considered. 20 C.F.R. §§ 404.1545(b), 404.1569a; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e). These include mental limitations such as the effects of depression, fatigue, pain, tenderness, numbness and muscle spasms.

Because of the Court's findings above, Petitioner's argument that the ALJ erred because he did not consider the impact of all of Petitioner's physical impairments when formulating Petitioner's RFC is without support in the record. Essentially, Petitioner argues that, had the ALJ credited Dr. Gustavel's and Dr. Krafft's opinions, as well as considered Dr. Goodwin's opinion that Petitioner' "lacked medical stability" and needed further surgery, the RFC assessment would have resulted in a finding of disability. Instead, the ALJ credited the state agency medical consultants' opinions, finding those

opinions consistent with the objective medical assessments in the record and consistent with Petitioner's own testimony she could use her right arm as a helper for her left arm. (AR 22.)

The Court finds the ALJ did not err in his analysis of the treating physicians' opinions, and therefore, the RFC finding also is free from legal error. To evaluate a worker with limited or no use of an upper extremity, SSR 83-12 indicates the loss of use of an upper extremity renders an individual unable to perform jobs requiring use of both arms or both hands. However, the potential occupational base is between sedentary and light work. SSR 83-12. Generally, such individuals would not be expected to perform sedentary work, because such work often requires good use of both hands. SSR 83-12. But, that generalization does not necessarily preclude work at the sedentary level, and a determination would depend upon the remaining function in the injured extremity. SSR 83-12. A vocational expert would be required to determine the size of the occupational base remaining, depending upon the individual's RFC. SSR 83-12.[3]

Here, other than Petitioner's limited use of her right arm, Petitioner had no other physical or mental limitations. The ALJ discussed the application of SSR 83-12. (AR 23.)

---

[3] Contrary to Petitioner's argument, neither SSR 83-12 nor SSR 96-9p automatically warrants a conclusion that a claimant is disabled if an individual has lost bilateral manual dexterity. SSR 83-12 simply indicates that an individual cannot perform jobs which require the use of both arms or both hands, which erodes the number of occupations represented by a full or wide range of light work, not that an individual is presumed to be disabled. Similarly, SSR 96-9p indicates that, while most unskilled sedentary jobs require bilateral manual dexterity, a manipulative limitation precluding the ability to handle objects with both hands will result in an erosion of the unskilled sedentary occupational base, not a presumption of disability.

**MEMORANDUM DECISION AND ORDER - 17**

The ALJ noted that, while a person cannot perform jobs which require the use of both arms or both hands, such loss of use does not automatically preclude all work. (AR 23.) The ALJ asked the vocational expert to consider a one-armed worker with limited use of one of her arms to perform work. (AR 81, 87.) The vocational expert found several jobs existed in the national economy that Petitioner could perform, and which incorporated a sit-stand option. (AR 84 – 87.)

   The vocational expert opined Petitioner could perform the jobs of surveillance system monitor, escort driver, and information clerk. Although the jobs of surveillance system monitor and escort driver are sedentary occupations, given the vocational expert's experience with the sedentary jobs selected, the vocational expert was of the opinion that a one-armed worker with limitations such as Petitioner's would be able to perform those jobs. (AR 85-86.) Additionally, even excluding those two sedentary jobs, the vocational expert was of the opinion someone with Petitioner's impairments could perform the position of information clerk, at the light exertional level.

   Petitioner argues her limitations with reaching are inconsistent with the vocational expert's testimony upon which the ALJ relied, because the vocational expert's opinion "assumes" Petitioner could occasionally reach in all directions, and occasionally handle, finger and feel with the right arm. (AR 18.) Petitioner argues the evidence does not support occasional use of the right arm.

   Petitioner's argument invites the Court to engage in an analysis of whether the Dictionary of Occupational Title's job description for each job is in conflict with the

**MEMORANDUM DECISION AND ORDER - 18**

vocational expert's testimony. *See, e.g., Marquez v. Colvin*, No. ED CV 15-1561-MRW, 2016 WL 1695368 *3 (C.D. Cal. Apr. 27, 2016) (resolving question whether DOT minimums involved one-handed versus two-handed reaching in the case of a one-armed worker). However, other than her cursory argument that light work and sedentary work requires reaching with both hands, without specific reference to the DOT or to the vocational expert's testimony, Petitioner has not presented sufficient argument on this issue.[4]

Moreover, the Court reviewed the DOT definitions for the representative jobs identified by the vocational expert and the ALJ (AR 24), and has found no conflict between the vocational expert's testimony and the DOT descriptions. The job of surveillance system monitor as described in the DOT does not state that both arms must be used in carrying out the duties of the job. *See* DICOT 379.367-010, *available at* 1991 WL 673244.[5] Similarly, the job of escort driver does not state that both arms must be used to carry out the duties of the job, nor do the duties described necessarily require the use of both arms. *See* DICOT 919.663-022, *available at* 1991 WL 687886.[6] Petitioner testified she could drive a vehicle. (AR 19.) And finally, the job of informational clerk

---

[4] Further, in contrast to *Marquez*, the ALJ and vocational expert specifically discussed whether a one-armed worker would be able to perform the representative occupations.

[5] To perform the position of surveillance system monitor, an individual must be able to push buttons and adjust monitor controls. The ability to handle, finger, and reach is "not present."

[6] The job description requires an individual to drive a vehicle and communicate by two-way radio. An individual must be able to lift, carry, push or pull objects, exerting a force of 10 pounds occasionally. Finger dexterity requirements are low, while reaching and handling are required 1/3 to 2/3 of the time.

**MEMORANDUM DECISION AND ORDER - 19**

does not state that both arms must be used to carry out the job duties. *See* DICOT 237.367-018, *available at* 1991 WL 672187.[7] Accordingly, given Petitioner's full use of her left arm and hand, the Court concludes there is no conflict between the vocational expert's testimony and the DOT.

Petitioner argues also that the analysis must consider the loss of use of Petitioner's dominant arm and hand, and the ALJ's failure to consider the loss of use of the dominant arm and hand was in error. However, the Court has found nothing in SSR 83-12, or the DOT, to indicate special consideration is given to the loss of use of one arm versus another. Nor has the Court found any authority to support Petitioner's assertion that the loss of use of a dominant arm or hand further erodes the occupational base, and Petitioner has cited none.

The Court therefore finds no error with regard to the ALJ's RFC determination, and finds substantial evidence supports the ALJ's conclusion that Petitioner is not disabled.

---

[7] The job description requires an individual to provide travel information for bus or train patrons, and answer inquiries regarding departures and arrivals. Handling is not significant, although reaching, handling and fingering must be performed.

**MEMORANDUM DECISION AND ORDER - 20**

## **ORDER**

Based upon the foregoing, the Court being otherwise fully advised in the premises,

**it is hereby ORDERED that** the Commissioner's decision finding that the Petitioner is

not disabled within the meaning of the Social Security Act is **AFFIRMED** and that the

petition for review is **DISMISSED**.


DATED: March 13, 2017

Honorable Candy W. Dale
United States Magistrate Judge


**MEMORANDUM DECISION AND ORDER - 21**